UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MARCITA TAYLOR, | ) | Case No.  6:06-bk-00570-KSJ |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| | ) | |

MEMORANDUM OPINION SUSTAINING
DEBTOR'S OBJECTIONS TO CLAIMS 11, 12, 13, AND 14

The debtor, Marcita Taylor, objects to four claims filed by B-Line, LLC ("B-Line") on two grounds.  First, the debtor argues that B-Line has failed to demonstrate any enforceable agreement establishing a debt due by the debtor to it pursuant to Section 502(b) of the Bankruptcy Code.[1]  Second, the debtor argues that B-Line has failed to meet the minimum requirements to establish a prima facie proof of claim pursuant to Bankruptcy Rule 3001(c), insofar as B-Line has failed to attach sufficient supporting documentation to the four proofs of claim.

B-Line is in the business of acquiring large portfolios of delinquent retail accounts and then attempting to collect balances due on these accounts, often in bankruptcy proceedings.  In this case, B-Line filed claims 11, 12, 13 and 14 on behalf of four original creditors—Sears, Best Buy, Rhodes Furniture, and Rooms to Go.  The debtor acknowledges she had accounts with these creditors many years ago.  She made purchases and payments for a long period of time. The debtor, however, has not incurred charges on any of these accounts for several years.  Nor has the debtor made any payments or received any statements requesting payment from these

---

[1] Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

creditors for years.  Indeed, the debtor testified she has received *no* communication from any of these creditors for at least three years before this Chapter 13 case was filed.[2]

Due to overwhelming financial problems, the debtor filed this Chapter 13 case on March 24, 2006.  In her schedules, the debtor listed debts to four creditors—Sears, Best Buy, Rhodes Furniture, and Rooms to Go.[3]   With the exception of Rooms to Go, the debtor scheduled her acknowledged liability at $5.00 due to each creditor.  She listed her liability due to Rooms to Go at $2,535.97.  At the hearing, the debtor credibly explained that she had absolutely no idea what the balance due to each of these creditors was because of the long period of time between the last statement she had received and her bankruptcy filing.  The creditors had simply been silent for years.

The debtor's schedules also listed every debt included on a recent copy of the debtor's credit report.  She credibly testified that she did not know the origin of many of the debts listed on her credit report, but she simply listed them in order to give potential creditors notice of the bankruptcy case in the event they had a valid claim.  She did not list these accounts as disputed on her schedules, but, based on her testimony, she properly should have treated these debts as disputed.

---

[2] B-Line failed to introduce any evidence, contradictory or otherwise.

[3] The debtor scheduled the following liabilities:  $5.00 due to CBUSA Sears (Account Number 5112/ Opened 10/01/1994/ Charge Account); $5.00 due to Hsbc/bstby (Account Number 0028/ Opened 10/29/1995/ Charge Account); $5.00 due to Hsbc/rhode (Account Number 1000/ Opened 10/1/1989/ Charge Account); and $2,535.97 due to Hsbc/rtg (Account Number 7599/Opened 7/9/1996/ Last active 10/1/2003/ Charge Account).

Specifically, the debtor listed four separate scheduled liabilities to Sherman Acquisition in various amounts.[4]  The dates the accounts were opened, the amount due, and the relevant account numbers vary substantially from the debtor's scheduled liability due to the individually named creditors, with the exception that the scheduled debts due to Rooms to Go were similar—$2,535.97 versus $2,558.00.

On July 27, 2006, B-Line filed four proofs of claim, all in the name of Sherman Acquisition, LLC.  Claim No. 11 was denominated a claim filed by Sherman Acquisition, LLC/Household-Best Buy in the amount of $1,140.88.  The proof of claim attached an exhibit denoted as "Account Summary."  The Account Summary provided virtually no information other than the date of the last purchase by the debtor, March 12, 2000, in the amount of $560.66, as well as the last four digits of the related account number, 6673.  The account number varies from the account number listed upon the face of the proof of claim, which is listed as 8924.  The summary does not disclose if interest was included, and, if so, the rate of interest used.  The summary also fails to list if the end balance includes any other charges, such as late fees.

The other three proofs of claim filed by B-Line are similar, except in the case of Claim No. 12, filed on behalf of Sears, which contains even less information.  Claim 12 provides no indication as to the last purchase date or amount.  All four proofs of claim fail to attach any

---

[4]  The debtor included the following four scheduled liabilities all payable to Sherman Acquisitions:  $8,084.00 (Account Number 2688/ Rhodes/ Opened 10/15/2004); $4,141.00 (Account Number 0221/ Sears/ Opened 4/29/2004); $2,558.00 (Account Number 7599/ Household Rooms to Go/ Opened 11/18/2004); and $1,113.00 (Account Number 6673/ Household Best Buy/Opened 10/18/2002).

agreement, account statement, invoice, or explanation of how the charges were incurred or the end balance calculated.[5]

The debtor testified that she received no communication from Sherman Acquisition and had no information as to how the accounts were purchased, transferred, or the liabilities determined. The debtor certainly never had any direct credit relationship with Sherman Acquisition.

The amounts of the proofs of claim are similar to the amounts listed for the debts due to Sherman Acquisition on the debtor's credit report; however, the account numbers used by Sherman Acquisition vary substantially from the account numbers used by B-Line on its proofs of claim and bear no relation to the account numbers listed by the debtor in her scheduled liabilities to the original creditors. Moreover, the date the accounts were opened vary substantially. For example, the debtor stated she opened a retail charge account at Rhodes in 1989. The liability listed in the debtor's credit report attributable to the Rhodes account and payable to Sherman Acquisition stated that the account was opened in October 2004, over 15 years later. To confuse matters further, Claim 13, filed by Sherman Acquisition in connection with the Rhodes account, provides that the account was last used in February, 2000. Based on the internally conflicting information contained in the debtor's schedules and the four proofs of claims, it is impossible to determine any particular retail account's balance, opening date, or account number.

To obfuscate matters even further, the debtor has had absolutely no contact with the claimant, B-Line. At the time the proofs of claim were filed, the debtor had no information that B-Line had any connection with her past credit accounts, if they indeed do. It was not until

---

[5] B-Line did file an amendment to Claim 14, which attached a document titled, "Rooms to Go Express Credit Program", which apparently was signed by the debtor on July 9, 1996. The

October 16, 2006, that B-Line filed a Notice of Transfer/Assignment of Claim form relating to transfers of the various accounts from Sherman Acquisition to B-Line.    The Notice of Transfer/Assignment of Claim, other than for security, provides no general information other than there was a transfer of a claim.[6]

The debtor objects to B-Line's claims on two grounds.    First, the debtor contends that B-Line has failed to attach sufficient documentation to establish a <u>prima facie</u> proof of claim as required by Bankruptcy Rule 3001(c).    Second, the debtor contends that B-Line has failed to demonstrate any enforceable agreement establishing a debt due. In response, B-Line argues that Bankruptcy Rule 3001(c) does not provide any basis for disallowing its claims, rather, that Bankruptcy Code Section 502 provides the exclusive list of the available grounds for objecting to, and/or disallowing claims.

The Federal Rules of Bankruptcy Procedure provide guidance on the form and content of a proof of claim.    For example, Bankruptcy Rule 3001(a) instructs that a proof of claim must "conform substantially to the appropriate Official Form." Bankruptcy Rule 3001(c) specifies what a creditor must attach to a claim and provides that when a claim "is based on a writing, the original or a duplicate shall be filed with the proof of claim."    If the writing has been lost or destroyed, the claimant may attach a statement explaining the circumstances for the loss or destruction of the writing. The official form for a proof of claim, Official Form 10, incorporates this requirement and instructs claimants to attach supporting documentation, such as writings, "invoices, itemized statements of running accounts, contracts," or to attach an explanation if such

---

amended claim included no account statements or any additional information of the charges incurred on this account or any explanation of the balance due.

[6] The debtor objected to the Notices of Transfer of Claims (Doc. Nos. 54, 55, 56, and 57).  The Court overruled these objections in an order entered on February 2, 2007, finding the debtor had no basis to object (Doc. No. 67).

documents are unavailable. If the documents are voluminous, a summary of the writing establishing the basis for the claim may be attached to the Official Form instead.

All retail charge accounts constitute claims based on a writing. See In re Kirkland, No. 7-01-15748MA, 2007 WL 118107  at *5, n.3 (Bankr. D.N.M. 2007) ("Claims for credit card debts are claims based on written agreements.") (citing In re Cluff, 313 B.R. 323, 334, n.32 (Bankr. D. Utah 2004) (noting that the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. requires credit card agreements to be in writing)); In re Armstrong, 320 B.R. 97, 104 (Bankr. N.D. Tex. 2005) (citing In re Kemmer, 315 B.R. 706, 714 (Bankr. E.D. Tenn. 2004); In re Henry, 311 B.R. 813, 817 (Bankr. W.D. Wash. 2004)). Typically, retail creditors require a consumer to sign a written note or agreement prior to extending credit.  If an account is administered in a typical fashion, the creditors also send the consumer regular monthly statements.  Therefore, in order to comply with Bankruptcy Rule 3001(c), a proof of claim asserting a debt on these types of consumer retail accounts should attach some pertinent writing evidencing a right to payment.

When necessary documentation is not attached to a proof of claim, the claim is not invalidated because no operation of law automatically strikes or disallows claims lacking the requisite supporting documentation. However, "[i]f the documentation is missing, the creditor cannot rest on the proof of claim." In re Shank, 315 B.R. 799, 810 (Bankr.N.D.Ga.2004) (citing In re Stoecker, 5 F.3d 1022, 1028 (7th Cir. 1993)). Rather, the claim will be deprived of prima facie validity under Rule 3001(f). In re Los Angeles Intern. Airport Hotel Associates, 196 B.R. 134, 139 (B.A.P. 9th Cir. 1996) (citing In re Stoecker, 5 F.3d 1022, 1027-28 (7th Cir.1993); Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage), 178 B.R. 222, 226-27 (B.A.P. 9th Cir. 1995).

Bankruptcy Rule 3001(f) provides that a properly executed and filed proof of claim[7] constitutes prima facie evidence of the validity and amount of the claim. A claim filed without sufficient supporting documentation is not entitled to this preferred treatment.  "In view of this evidentiary effect, the requirements of Rule 3001(c) and Official Form 10 are meaningless unless they require sufficient documentation that has some evidentiary import and establish something other than the same conclusory allegations set forth in the proof of claim form itself." In re Shank, 315 B.R. 799, 810 (Bankr.N.D.Ga.2004). The rules rightfully require creditors to attach minimal supporting documentation for their claims so that a debtor can evaluate their validity without discovery or extraordinary expense. See, Armstrong, 320 B.R. at 104-105 ("The documentation required by Bankruptcy Rule 3001 and Official Form 10 allows the debtor and the Chapter 13 Trustee to have enough information to fully determine whether or not a valid claim in the proper amount has been filed."). As Judge Briskman held in In re Sandifer, 318 B.R. 609, 611 (Bankr. M.D. Fla. 2004), Bankruptcy Rule 3001(c) is designed to provide the debtor with "fair notice of the conduct, transaction, and occurrences that form the basis of the claim." In many cases, the supporting documentation may be limited; however, in every case where the claim is based on a writing, some documentation is needed.  Attaching supporting documentation is a mandatory prerequisite to establishing a claim's prima facie validity.

In the absence of an objection by a party in interest, a proof of claim is allowed as filed pursuant to Bankruptcy Code Section 502(a), whether prima facie valid or not. When an objection is raised, however:

> the bankruptcy court whose aid is sought for enforcement of an asserted claim is not bound to treat the tendered proof as conclusive. When objections are made, it

---

[7]      In order to be executed and filed in accordance with the bankruptcy rules, "the claim must be in writing, substantially conform to Official Form 10, [] be executed by the creditor or the creditor's agent" and, where "the claim is based on a writing, a copy or summary of the writing must be filed with the proof of claim." In re Habiballa, 337 B.R. 911, 915 (Bankr.E.D.Wis.2006) (citing Cluff, 313 B.R. at 332).

is duty bound to pass on them. That process is, indeed, of basic importance in the administration of a bankruptcy estate whether the objective be liquidation or reorganization. Without that sifting process, unmeritorious or excessive claims might dilute the participation of the legitimate claimants.

Gardner v. State of N.J., 329 U.S. 565, 573 (1947). Upon a dispute or objection concerning a proof of claim, the burden:

> shifts to the objecting party to produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, by the presentation of legal arguments based upon the contents of the claim and its supporting documents . . . in which evidence is presented to bring the validity of the claim into question. If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence.

Armstrong, 320 B.R. at 104 (citing In re Rally Partners, LP., 306 B.R. 165, 168-169 (Bankr.E.D.Tex.2003) (citations omitted).   Therefore, based upon this shifting burden of proof standard, a proof of claim which lacks prima facie validity is quickly disallowed upon a valid objection, unless the claimant then provides sufficient evidence to establish the validity of the claim by a preponderance of the evidence.

In this case, the four claims filed by B-Line are not prima facie valid because B-Line failed to properly file its proofs of claim attaching sufficient supporting documentation, as required by Bankruptcy Rule 3001(c).  The debtor then objected to the proofs of claims arguing that the claims should be disallowed pursuant to Bankruptcy Code Section 502(b)(1) because the claims, as filed, were without any evidentiary value and were unenforceable against the debtor or the debtor's property under any agreement or applicable law. The debtor presented credible evidence in support of this objection and, thereby, shifted the burden of proof back to B-Line. For whatever reason, B-Line failed to submit any refuting evidence or otherwise substantiate the

debt claimed in the proofs of the claim.  As such, the debtor's objections are sustained, due to B-Line failing to carry its burden of proof.

This is not a case where the debtor is trying to evade payment of a legitimate debt based on a technical failure to attach adequate documentation to a proof of claim. Rather, the debtor has raised a substantive objection under Section 502(b)(1) of the Bankruptcy Code. As discussed above, the summaries attached to each of the four claims filed by B-Line fall woefully short of any pretext of attempting to comply with Bankruptcy Rule 3001(c).  The summaries provide virtually no information that would assist the debtor in evaluating the validity of the claims or determining any legitimate amount due.

More troubling, the summaries are internally inconsistent.  For example, the account number B-Line listed on the face of the claim is inconsistent with the account number B-Line listed on its own attached summary and both account numbers differ from the number that the debtor listed for the applicable retail account.  Further, the dates the accounts were opened, as listed on the debtor's credit report, are later than the date of the last activity on the account.  As an example, Claim 11, filed by B-Line on behalf of Best Buy, provides that the last purchase date was March 12, 2000.   Yet, in the debtor's credit report, Sherman Acquisitions, B-Line's predecessor in interest, provides that the account was opened on October 18, 2002, two years **after** the last purchase.  How can a creditor open an account two years after the last purchase? Obviously, B-Line, as claimant, has the responsibility to attach enough information to their own proofs of claim to explain the amounts sought.

Of course, the difficult issue is how much documentation is sufficient.[8]  In addressing a similar issue, this Court previously held that no bright line test is possible.  In re Sandifer, 318 B.R. 609 (Bankr. M.D. Fla. 2004). Rather, courts must evaluate the adequacy of documentation on a case by case basis, and construe Bankruptcy Rule 3001(c)'s documentation requirements in such a way as "to secure the just, speedy, and inexpensive determination of every case and proceeding" as Bankruptcy Rule 1001 instructs. The court must balance the need to provide debtors with sufficient information to assess claims against the goal of not unduly burdening claimants.

Thus, in a usual case, attaching one or more recent, monthly account statements likely will suffice. However, in situations where there is considerable confusion, such as that here, substantial additional documentation is merited.  Certainly, if a creditor fails to initially attach sufficient documentation, the creditor should be given an opportunity to supplement the initial

---

[8]       While there is clearly no uniform standard for what must be contained in a summary attachment to a proof of claim, a few courts have endeavored to provide some general guidance. For example, in In re Heath, 331 B.R. 432-433 (B.A.P. 9th Cir. 2005), the Bankruptcy Appellate Panel for the Ninth Circuit stated that "some breakdown of interest and other charges must be included." In In re Cluff, 313 B.R. 323 (Bankr. D. Utah 2004), the bankruptcy court instructed that the summary "attached to the proof of claim should: (i) include the amount of the debts; (ii) indicate the name and account number of the debtor; (iii) be in the form of a business record or some other equally reliable format; and (iv) if the claim includes charges such as interest, late fees and attorney's fees, the summary should include a statement giving a breakdown of those elements." In In re Moreno, 341 B.R. 813 (Bankr. S.D. Fla. 2006), the bankruptcy court suggested possible documentation requirements in three alternative scenarios: (i) little, if any, documentation is needed where debtor schedules undisputed claims in dollar amounts close to those assigned to creditor; (ii) if account number on proof of claim correlates to scheduled account number but dollar amount in proof of claim is higher than scheduled claim, where proof of claim attaches insufficient documentation to establish prima facie validity, creditor carries burden of establishing its claim for amount exceeding scheduled amount; (iii) where debt is not scheduled and debtor files an objection to the existence of the debt, "necessary documentation may include the original account agreement or at least copies of account statements evidencing the debt." In In re Henry, 311 B.R. 813, 817-818 (Bankr.W.D.Wash.2004), the bankruptcy court stated that, as a general rule, where a debt is based on a writing, "a creditor must, at a minimum, file with its proof of claim form, but in no event later than in response to a claims objection by the debtor, (i) a sufficient number of monthly account statements to show how the total amount

claim to add the additional supporting documentation.  See In re South Atlantic Financial Corp., 767 F.2d 814, 819 (11th Cir. 1985) ("[I]n a bankruptcy case, amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.") (quoting In re International Horizons, Inc., 751 F.2d 1213, 1216 (11th Cir.1985)).  Moreover, the same rule as to needed documentation applies to all creditors, whether the creditors trade in large number of consumer accounts or hold mortgages on real estate.  If a mortgage lender must attach a copy of the underlying note and mortgage, the assignee of a retail lender also should have to attach a copy of its most recent statement.  Failure to attach sufficient documentation to a proof of claim results in the claim lacking any prima facie validity, which, upon a proper objection, makes the claim subject to disallowance.

B-Line has had an ample opportunity to supplement its claims and to present evidence, if desired.  B-Line, however, has utterly failed to supply any additional documentation and to explain their claim amounts.  At the scheduled evidentiary hearing on the debtor's objections, B-Line did not have a corporate representative testify or otherwise present any evidence of its underlying claims.  Rather, B-Line rested on the internally inconsistent claims and the debtor's contradictory schedules, arguing that Bankruptcy Rule 3001(c) provides no basis for disallowance, and that the debtor's listing of the four claims owing to Sherman Acquisitions, B-Line's predecessor in interest, constitutes an admission of the existence of those debts such that the debtor should now be judicially estopped from objecting to B-Line's claims.

B-Lines arguments simply fail.  First, the Court is sustaining the debtor's objections to B-Line's claims, not because of the documentation insufficiency under Bankruptcy Rule 3001(c), but because B-Line did not establish it holds a legally enforceable agreement supporting the

asserted has been calculated, and (ii) a copy of the agreement authorizing the charges and fees

claim.  Bankruptcy Rule 3001 merely provides that B-Line's claims were not entitled to <u>prima</u> <u>facie</u> validity.  The debtor's objection, however, is substantive and asserted pursuant to Section 502(b) of the Bankruptcy Code.  The debtor credibly testified that she could not ascertain the validity of the debt, and B-Line then made a choice <u>*not*</u> to introduce evidence that would support its position.  B-Line's claims are disallowed because they failed to carry their burden of proof, not solely because they did not initially attach sufficient documentation to their proofs of claims.

Second, B-Line's argument that the debtor is judicially estopped from objecting to B-Line's claims also fails.  Certainly, bankruptcy schedules can constitute admissions under Federal Rule of Evidence 801(d)(2).  <u>In re Heath</u>, 331 B.R. 424 (B.A.P. 9th Cir. 2005) (<u>citing</u> <u>Cluff</u>, 313 B.R. at 340).  To invoke judicial estoppel "[u]nder Eleventh Circuit law: a party must have taken inconsistent positions under oath, and these inconsistencies 'must be shown to have been calculated to make a mockery of the judicial system.'" <u>Barger v. City of Cartersville, Ga.</u>, 348 F.3d 1289, 1297 (11th Cir. 2003) (<u>quoting</u> <u>Burnes v. Pemco Aeroplex, Inc.</u>, 291 F.3d 1282, 1284 (11th Cir.2002)).  When considering the applicability of judicial estoppel, courts must "always give due consideration to all of the circumstances of a particular case." <u>Barger</u>,  348 F.3d at 1297 (<u>quoting</u> <u>Burnes</u>, 291 F.3d at 1284)).

The particular circumstances of this case posit against using judicial estoppel. Here, the debtor's actions clearly were not calculated to make a mockery of the judicial system.  If anything, the debtor was acting to give *all* possible creditors notice of her bankruptcy filing, a laudable goal, not one designed to abuse the bankruptcy system.  She listed both her original creditors and the unknown Sherman Acquisitions as possible claimants on her schedules. Although the debtor's schedules rightfully should have listed the debts due to both the original creditors and to Sherman Acquisition as duplicative and disputed, the debtor's failure to do so

included in the claim."

does not justify the draconian remedy of precluding her from objecting to claims that are not even entitled to <u>prima facie</u> validity.

Accordingly, the Court sustains the debtor's objection to Claims 11, 12, 13 and 14 (Doc. Nos. 28, 29, 30 and 31) pursuant to Bankruptcy Code Section 502(b)(1).  The debtor has proven through testimony that the claims are not based on any legally enforceable agreement.  B-Line has failed to introduce any evidence in support of the claims.  Failure to attach sufficient documentation to a proof of claim results in the claim lacking any <u>prima facie</u> validity, which upon a proper objection, makes the claim subject to disallowance.  A separate order consistent with this Memorandum Opinion is entered simultaneously herewith.

DONE AND ORDERED in Orlando, Florida, this 5th day of March, 2007.

_____

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Debtor:  Marcita Taylor, 381 Bellhaven Falls Drive, Ocoee, FL  34761

Debtor's Counsel:  L. Todd Budgen, Pantas Law Firm PA, 250 N. Orange Ave., 11th Floor, Orlando, FL  32801

Chapter 13 Trustee, Laurie K. Weatherford, P.O. Box 3450, Winter Park, FL  32792

Creditor:  B-Line, LLC, c/o Gary Lublin, Law Offices of Gary Lublin, PA, 732 N. Thornton Avenue, Orlando, FL  32803

Creditor's Counsel:  Gary Lublin, Law Offices of Gary Lublin, PA, 732 N. Thornton Ave., Orlando, FL  32803